# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF LOUISIANA
# ALEXANDRIA DIVISION

| | |
|---|---|
| KENNETH FORD | CIVIL DOCKET NO. 1:19-CV-01376 |
| VERSUS | JUDGE DAVID C. JOSEPH |
| MAHINDRA USA, INC., ET AL | MAGISTRATE JUDGE JOSEPH H.L. PEREZ-MONTES |

## MEMORANDUM RULING

Before the Court is a MOTION FOR SUMMARY JUDGMENT ("the Motion") [Doc. 32] filed by Defendant, Twin City Fire Insurance Company ("Twin City"). For the following reasons, the Court GRANTS the Motion.

### BACKGROUND

On October 22, 2018, Plaintiff, Kenneth Ford ("Ford"), purchased a 2018 Mahindra "Mforce" 105S tractor from Defendant, Red Dirt ATV & Tractor, LLC ("Red Dirt"), in Alexandria, Louisiana for personal, family, and household use. [Docs. 1 ¶ 8, 5 ¶ 8]. The purchase price of the tractor was $54,000, excluding finance charges and sales tax. Ford alleges that the sales transaction included several express and implied warranties. [Docs. 1 ¶¶ 10–14, 5 ¶ 9].

Within weeks after the sale, Ford alleges that the tractor began to manifest defective conditions, including: (i) the tractor's failure to properly lift accessories; (ii) "jerking," or intermittent interruption in the tractor's hydraulics system; (iii) a leaking gas tank; and (iv) a faulty solenoid, making the "power takeoff" inoperable. [Doc. 1 ¶ 15]. The Complaint further alleges that, "as delivered to Plaintiff, the tractor was defective in materials and workmanship, with such defects being discovered within the warranty periods." [*Id.*].

1

Upon discovering these purported defects, Ford claims that he returned the tractor to Red Dirt for repairs on numerous occasions within the term of the express warranty. [*Id.* ¶ 16]. Despite Red Dirt's repair efforts, Ford maintains that the tractor continued to experience repeated mechanical breakdowns and continues to exhibit defective conditions to date. [*Id.*]. Ford represents that he notified Red Dirt and Defendant Mahindra USA, Inc. ("Mahindra") – the tractor's manufacturer – of the tractor's persistent defects and of his resulting desire to rescind the sale. [*Id.* ¶ 18].

On October 21, 2019, Ford brought suit against Red Dirt and Mahindra seeking rescission and damages based on violations of Louisiana's redhibition and negligence laws, the Magnuson-Moss Warranty Act (MMWA), and the Louisiana Unfair Trade Practices and Consumer Protection Law (LUTPA). [Doc. 1]. In an Amended Complaint filed on September 24, 2020, Ford added Twin City as a defendant, alleging that the commercial general liability (CGL) insurance policy (the "Policy") that Twin City issued to Mahindra may cover all or part of the damages sought against Mahindra. [Doc. 21]. After receiving service of the Amended Complaint, Twin City issued a disclaimer of coverage to Mahindra. [Doc. 32-1].

In general terms, the Twin City CGL Policy at issue provides coverage to Mahindra for sums it becomes legally obligated to pay resulting from "property damage" or "bodily injury" occurring during the policy period, so long as the damages are caused by a covered "occurrence," subject to various conditions and exclusions. [Doc. 32-7]. The Policy covered the period from March 31, 2018 to March 31, 2019. [*Id.*].

Ford alleges that Twin City is liable for "property damage" he has incurred from the tractor's repeated mechanical breakdowns and loss of use, including all incidental and consequential damages, past and future economic damages, and attorney's fees.[1] [Doc. 34]. In addition, Ford seeks "bodily injury" damages from Twin City for the alleged mental anguish, humiliation, and inconvenience he has suffered. [*Id.*].

Twin City filed this Motion for Summary Judgment on March 19, 2021, contending that it should be dismissed from this lawsuit with prejudice because the Policy does not provide coverage for Ford's claims against Mahindra. [Doc. 32]. On April 8, 2021, Plaintiff opposed the Motion [Doc. 34], to which Twin City replied [Doc. 35]. The Motion is now ripe for ruling.

## SUMMARY JUDGMENT STANDARD

A court should grant a motion for summary judgment when the pleadings, including the opposing party's affidavits, "show that there is no dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). In applying this standard, the Court should construe "all facts and inferences in favor of the nonmoving party." *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 745 (5th

---

[1] In his Opposition to this Motion [Doc. 34], Ford concedes that the Policy excludes coverage for the costs of repairing and replacing the tractor. Indeed, Louisiana courts consistently hold that the work-product exclusion in a CGL policy (contained in the Twin City Policy at issue), precludes coverage for the cost of repairing or replacing the insured's own defective product. *See Atain Specialty Ins. Co. v. Siegen 7 Developments, L.L.C.*, 820 Fed. App'x. 270, 273 (5th Cir. 2020) ("Louisiana courts have consistently held that [this] exclusion eliminates coverage for the cost of repairing or replacing the insured's own defective work or defective product.") (quoting *Supreme Servs. & Specialty Co. v. Sonny Greer, Inc.*, 2006-1827 (La. 5/22/07), 958 So. 2d 634, 643).

3

Cir. 2017); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."). As such, the party moving for summary judgment bears the burden of demonstrating that there is no genuine issue of material fact as to issues critical to trial that would result in the movant's entitlement to judgment in its favor, including identifying the relevant portions of pleadings and discovery. *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995). The court must deny the moving party's motion for summary judgment if the movant fails to meet this burden. *Id.*

If the movant satisfies its burden, however, the nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* (citing *Celotex*, 477 U.S. at 323). In evaluating motions for summary judgment, the court must view all facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). There is no genuine issue for trial – and thus a grant of summary judgment is warranted – when the record as a whole "could not lead a rational trier of fact to find for the non-moving party...." *Id.*

## DISCUSSION

### I. Applicable Law

In a diversity case, a federal court must apply the choice-of-law rules of the forum state in which it sits. *Pioneer Exploration, L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 512 (5th Cir. 2014). Accordingly, the Court applies Louisiana choice-of-law principles in determining the law governing the insurance contract between Twin City and Mahindra. Louisiana law provides, generally, that the law of the state where

4

an insurance contract is issued and executed guides the court's interpretation of that contract. *Id.* Although the Policy was issued in Texas – and thus Texas law may apply under Louisiana choice-of-law provisions – "[w]here the parties are unable to identify any conflicts in the decisional law of the states, the court may proceed with the application of forum law." *Richard v. Anadarko Petroleum Corp.*, 6:11-CV-0083, 2015 WL 1357013, at *4 (W.D. La. Mar. 24, 2015), *aff'd*, 850 F.3d 701 (5th Cir. 2017) (quoting *Pioneer Exploration*, 767 F.3d at 512). Here, the parties have not identified any relevant conflict between the substantive law of Texas and Louisiana pertaining to insurance policy interpretation and concede that the applicable laws of the two states are substantially similar. Therefore, Louisiana law will govern the Court's analysis of the issues presented herein.

Under Louisiana law, insurance policies are treated as contracts between the insurance company and the insured and should therefore be construed in a manner consistent with the Louisiana Civil Code's general rules of contract interpretation. *See IberiaBank Corp. v. Illinois Union Ins. Co.*, 953 F.3d 339, 345 (5th Cir. 2020) (citing *Cadwallader v. Allstate Ins. Co.*, 848 So. 2d 577, 580 (La. 2003)). The words used in a contract must be attributed to their plain and ordinary meaning, except when a word has a technical meaning. La. Civ. Code Art. 2047. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code Art. 2046; *see also Cadwallader*, 848 So. 2d at 580 ("If the policy wording at issue is clear and unambiguously expresses the parties' intent, the insurance contract must be enforced as written.").

5

Once a court ascertains the meaning of an insurance contract, it should grant summary judgment only "when the facts are taken into account and it is clear that the provisions of the insurance policy do not afford coverage." *Supreme Servs. & Specialty Co., Inc. v. Sonny Greer, Inc.*, 2006-1827, p. 6 (La. 5/22/07); 958 So.2d 634, 638. Here, the scope of coverage set forth in the Policy and its relationship with the facts alleged in Plaintiff's Complaint and summary judgment evidence dictate whether Twin City is entitled to summary judgment.

## II. Coverage for "Property Damage"

Twin City contests coverage for "property damage" on two grounds. First, it argues that any harm sustained by Ford does not meet the Policy's definition of "property damage." Alternatively, Twin City maintains that even if Ford has established a genuine issue of "property damage," the Policy's "work-product exclusion" unambiguously bars coverage of his claim.

The Policy defines "property damage" as: (i) physical injury to tangible property, including all resulting loss of use of that property or (ii) loss of use of tangible property that is not physically injured. [Doc. 32-7 p. 33]. The work-product exclusion contained in the Policy explicitly excludes coverage for "Damage To Your Product" – defined therein as "property damage" to "your product" arising out of it or any part of it. [*Id.* p. 18]. The term, "your product" is defined in the Policy, in relevant part, as, "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by" the insured or others "trading under [the insured's] name." [*Id.* p. 34].

Relying on the Fifth Circuit's opinion in *Hollybrook Cottonseed Processing, L.L.C. v. Am. Guarantee & Liab. Ins. Co.*, Ford contends that the definition of "property damage" encompasses the economic loss he has purportedly suffered on account of the tractor's repeated mechanical breakdowns and loss of use. *See* 772 F.3d 1031 (5th Cir. 2014). The Court finds that *Hollybrook* is indeed instructive on the resolution of this Motion, but that its primary relevance to the facts *sub judice* relates to the applicability of the work-product exclusion in a CGL policy to a claim for pure economic loss.

The plaintiff in *Hollybrook* was the operator of a small cotton mill that contracted with a supplier for the purchase of certain cotton processing equipment. *Id.* at 1033. After the equipment was received and installed in the cotton mill, numerous mechanical failures ensued, causing the plaintiff to experience significant downtime of its entire plant and to lose the use of not only the newly-purchased equipment, but also of its other equipment. *Id.* The plaintiff then sued the supplier and the supplier's insurer, asserting a right to "property damage" coverage under the supplier's CGL policy for the economic loss sustained. *Id.*

Because the plaintiff's harm resulted from loss of use of its entire plant and other equipment, and not only from the harm related to the defendant-supplier's products, the Court affirmed the district court's holding that the work-product exclusion did not exclude coverage of the plaintiff's claims. *Id.* at 1035. Critical to the resolution of this Motion, the Court reasoned that, "while the exclusion precludes coverage for damages due to the repair or replacement costs of the insured's actual

7

equipment, it does not preclude coverage for loss resulting from damage to *other* property." *Id.* (emphasis added).

Here, it is undisputed that: (i) Ford purchased a tractor manufactured by Mahindra for personal, family, and household use and (ii) Ford asserts a right to coverage for economic loss he has suffered resulting from the tractor's alleged mechanical failures and loss of use. Unlike the plaintiff in *Hollybrook*, however, Ford neither alleges nor presents any evidence that he sustained economic loss to property other than the tractor itself. [Docs. 1, 34]. As such, because the work-product exclusion unambiguously excludes coverage for "property damage" to Mahindra's own products, the Policy does not entitle Ford to damages for economic loss sustained due to the tractor's defective conditions. *See, e.g., Atain Specialty Ins. Co. v. VIG II, LLC*, CV 15-6499, 2017 WL 3867672, at *6 (E.D. La. Feb. 9, 2017) ("Because the [claimants'] home is [the insured-manufacturer's] product, and the complaint evinces no claims for damage to anything other than the house itself, the "Damage To Your Product" exclusion unambiguously precludes coverage for the [claimants'] claims."); *Houston Specialty Ins. Co. v. Ascension Insulation & Supply, Inc.*, 17-CV-1010, 2018 WL 4031778, at *7 (W.D. La. Aug. 7, 2018), *report and recommendation adopted*, 17-CV-1010, 2018 WL 4008988 (W.D. La. Aug. 22, 2018) (work-product exclusion did not bar coverage where the plaintiffs sued not only for replacement of faulty equipment installed by the insured-manufacturer but also for related loss of use of and damages sustained to their home); *Martco Ltd. P'ship v. Wellons, Inc.*, 588 F.3d 864 (5th Cir. 2009) (lost production, profits, and business opportunities suffered by the plaintiff-plant owner constituted "property damage" not barred by a CGL policy's work-

8

product exclusion where the plant experienced shutdowns due to mechanical failures of the insured-manufacturer's equipment installed at the plant).

Because Plaintiff has failed to establish a genuine issue of actual injury sustained to property other than the tractor itself, the Court finds that summary judgment in favor of Twin City is warranted as to the "property damage" claim.

## III. Coverage for "Bodily Injury"

In addition to "property damage," Ford seeks coverage for "bodily injury" on account of the mental anguish he has allegedly sustained. Twin City disputes coverage based on a lack of physical injury suffered by Ford. The Court finds that mental anguish does not qualify as "bodily injury" under the facts presented.

The Policy defines "bodily injury" as "*physical* injury, sickness, or disease sustained by a person and, if arising out of the above, mental anguish or death at any time." [Doc. 32-7 p. 31] (emphasis added). Louisiana jurisprudence demonstrates that, where an insurance policy requires an injury that is physical in nature to trigger "bodily injury" coverage, and the claimant has not suffered a physical harm, mental anguish does not constitute bodily injury. *See, e.g., Hebert v. Webre*, 2008-0060, p. 10 (La. 5/21/08); 982 So.2d 770; *Smith v. Thomas*, 51,093, p. 13 (La. App. 2nd Cir. 1/25/17); 214 So.3d 945, 954, *writ denied*, 2017-0343 (La. 4/7/17); 218 So.3d 112; *see also Grubaugh v. Cent. Progressive Bank*, CIV.A. 13-3045, 2014 WL 793991 (E.D. La. Feb. 27, 2014); *Karle v. Am. Int'l Grp., Inc.*, 1:09-CV-01022, 2010 WL 3342289 (W.D. La. Aug. 24, 2010). As the Louisiana Supreme Court noted in *Hebert v. Webre*, an insurance policy's "addition of the word 'physical' is sufficient … to differentiate a 'bodily injury' sustained in a physical manner … from an injury which is emotional

9

in nature and, though might have physical consequences, is not a 'physical' bodily injury." 982 So.2d at 777.

Here, the Policy unambiguously limits "bodily injury" coverage to physical injury and provides coverage for mental anguish only where it stems from a physical injury. Because Ford has not established that his mental anguish resulted from physical injury, the Policy does not provide coverage for his alleged mental anguish. Accordingly, summary judgment is proper as to all of Plaintiff's claims against Twin City.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment [Doc. 32] is GRANTED.

IT IS FURTHER ORDERED that all claims asserted by Plaintiff against Twin City are DISMISSED WITH PREJUDICE.

THUS, DONE AND SIGNED in Chambers on this 29th day of June 2021.

DAVID C. JOSEPH
UNITED STATES DISTRICT JUDGE